# Sutliff *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroad—Bridge—Province of court and jury.*

A railroad company owned a covered bridge 800 feet long. At the side of the track was a wagon road used by the public on the payment of tolls, but so close to the track that a train and a wagon could not safely pass at the same time. On the approach to the covered portion of the bridge the space between the side of the cars and the wheels of wagons was only three or four feet. A safety gate was placed at the land end of the approach. The gate was lowered when the bridge was in use for the passage of trains, and raised when the gate was opened to the public. The

driver of a wagon who knew the rules as to the gate, having paid toll and finding the gate raised drove on the approach. After a time he was stopped by a line of wagons which had been halted near the end of the bridge. This was caused by the derailment of some cars on a train that was being pushed across the bridge in the direction in which the driver was going. At the time the driver stopped, this train had been cut in two and a locomotive with tender in front was drawing a portion of the train back towards the driver at the rate of eight to nine miles an hour. The driver testified that when he stopped, he got off the wagon and stood on the tracks, and then for the first time saw the train. He was not able to extricate himself, and he was injured in the attempt to hold his horses. *Held* in an action against the railroad company to recover damages for the injuries, that the case was for the jury.

Argued April 13, 1903. Appeal, No. 163, Jan. T., 1903, by defendant, from judgment of C. P. Luzerne Co., March T., 1899, No. 266, on verdict for plaintiff in case of Wells Sutliff v. Pennsylvania Railroad Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before LYNCH, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*Henry W. Palmer,* for appellant.—Open gates do not relieve the traveler from the imperative duty which the law puts upon him, to stop, look and listen: P. & R. R. R. Co. v. Killips, 88 Pa. 405; Matthews v. Phila. & Read. R. R. Co., 161 Pa. 28; Lehigh Valley R. R. Co. v. Greiner, 113 Pa. 600; Trout v. Electric Ry. Co., 13 Pa. Superior Ct. 24; Meyers v. B. & O. R. R. Co., 150 Pa. 386; Lees v. P. & R. R. R. Co., 154 Pa. 46; Gangawer v. P. & R. R. R. Co., 168 Pa. 265; Connerton v. D. & H. Canal Co., 169 Pa. 339; Sellers v. Union Traction Co., 21 Pa. Superior Ct. 5; Kilpatrick v. Penna. R. R. Co., 140 Pa. 502; Penna. R. R. Co. v. McTighe, 46 Pa. 316.

*John T. Lenahan,* with him *E. F. Cooke,* for appellee.—A private corporation operating a toll bridge which invites trav-

eler, with a team, to a place of danger on the same in violation of its bridge regulations and without contributory negligence on his part, and injures him by fright of team in the running of its train, is responsible in damages for such neglect: Plymouth Twp. v. Graver, 125 Pa. 24; Cougle v. McKee, 151 Pa. 602.

OPINION BY MR. JUSTICE FELL, May 18, 1903:

The only error assigned is the refusal of the court to direct a verdict for the defendant on the ground of contributory negligence. The defendant owns a covered wooden bridge 800 feet long which spans the Susquehanna river at Nanticoke and is used for the transportation of its cars and by the public on the payment of tolls. The eastern approach to the bridge is an elevated trestle 900 feet long, twenty-one feet wide, and twenty feet high, on one side of which are the railroad tracks and on the other a passageway for wagons. The bridge is not wide enough to allow its use by cars and wagons at the same time, and on the approach the space between the side of a car and the wheels of a wagon passing it is only three or four feet. Because of the impossibility of cars and wagons passing on the bridge, and the great danger in their passing on the approach, a safety gate is placed at the eastern end of the approach. This gate is lowered when the bridge is in use for the passage of trains, and raised when the bridge is open to the public. This use of the bridge was understood by the plaintiff, who, having paid toll and finding the gate raised, drove on the approach. After proceeding about 700 feet, he was stopped by a line of wagons which had been halted near the end of the bridge. It appeared that some of the cars of a coal train that was being pushed across the bridge in the direction the plaintiff was going had been derailed at the west end of the bridge. In order to clear the track the train had been cut, and at the time the plaintiff was stopped, a part of the train was being drawn out of the bridge by an engine running with its tender in front. The plaintiff testified that he got off the wagon and stood on the railroad tracks, and then for the first time saw this train as the engine was coming out of the bridge; that it approached and passed him at the rate of eight or ten miles an hour, and that he was injured in the attempt to hold his horses.

This is the testimony that the court had to consider in passing on the request for instructions. We see nothing in it that would warrant the withdrawal of the case from the jury. The plaintiff drove on the approach with notice because of the position of the gate that the bridge was open and safe for travel. The engine was then half way across the bridge, and if the plaintiff could have seen it, his natural assumption would have been that it was going in the same direction he was, and that he could proceed in safety. When he first saw that he was in danger, he had neither time to turn around nor space in which to do so, as the engine was within 200 feet of him and the approach to the bridge was too narrow to admit of his turning his wagon. Of course, the fact that the gate was up would not release him from the charge of contributory negligence if he went on notwithstanding an obvious danger which he saw or should have seen. But this view of the case was fully covered in the charge in which it was said: "Although the pole or gate was raised, still it was Mr. Sutliff's duty to exercise reasonable care to see that there was no danger or apparent danger on the bridge. . . . If you believe he saw the engine on the bridge, had reason to believe it would return, and found he was in a bad place and could with reasonable skill and effort extricate himself from the place, it was his duty to so do."

The judgment is affirmed.